IN THE CIRCUIT COURT OF BARBOUR COUNTY, WEST VIRGINIA

MICHAEL HUNT,

    Plaintiff,

v.                                                       CIVIL ACTION NO. 2:17CV138
                                                             (Judge John P. Bailey)

WELLS FARGO BANK N.A. d/b/a
WELLS FARGO HOME MORTGAGE, INC.,

    Defendant.

## FIRST AMENDED COMPLAINT

1.    This case arises out of mortgage loan servicing abuse. Here, Plaintiff Michael Hunt—a military veteran—obtained a special loan guaranteed by the Veteran's Administration. Sgt. Hunt's loan provided special contractual protections to Sgt. Hunt in the event that he at some point began to struggle with his payments. In 2016, Defendant Wells Fargo, the servicer of the loan, misapplied Sgt. Hunt's payments. As a result, the loan improperly showed as delinquent. Defendant then directed Plaintiff to stop making payments, causing Plaintiff to fall even further behind. Defendant instructed Sgt. Hunt to apply for assistance—even though he could make his payments—but then refused to appropriately consider Sgt. Hunt's family for the programs that are required by the VA guaranteed loan. Then, after moving to foreclose on his property, threatened to charge Plaintiff fees not authorized by contract or law. Sgt. Hunt brings this action for breach of contract and unlawful debt collection conduct.

## PARTIES

2.    Plaintiff Michael Hunt lives with his wife and eight year old son in his home located at 417 South Beverly Pike, Belington, West Virginia 26250 (formerly 805 Beverly Pike). Sgt. Hunt is a military veteran who has served in the National Guard for nearly eighteen years.

3.  (a)  Defendant Wells Fargo Bank N.A. d/b/a Wells Fargo Home Mortgage, Inc. ("WFB"), is a corporation doing business in West Virginia with its principal place of business at 1 Home Campus, MAC X2401-049, Des Moines, Iowa 50328. Defendant is the holder and servicer of the loan.

(b)  On April 13, 2011, Wells Fargo entered into a stipulated consent order with the Comptroller of Currency for the United States and the United States Department of Justice to address its systematic failure to service loans, including by failing to appropriately credit payments to borrower accounts, failing to appropriately process loss mitigation applications, and improperly pursuing foreclosure.

(c)  As part of that consent order, Wells Fargo agreed to accept and credit mortgage payments, and agreed to take steps to ensure that it properly processed loss mitigation applications and did not improperly foreclose on borrower's homes.

## STATEMENT OF FACTS

4.  In or around 2008, Plaintiff purchased the home after returning from military service in Iraq.

5.  On or about June 21, 2013, Plaintiff refinanced his mortgage loan through Military Family Home Loan, LLC.

6.  The loan had a principal balance of $74,350.00 and contained a contractual guarantee by the Veteran's Administration (VA), which requires—as incorporated into the contract—that Defendant comply with regulations and laws governing VA guaranteed loans, including those regulations governing Defendant's actions in the event of the borrower's default. In or around July 2013, the loan was assigned to Defendant Wells Fargo Bank, N.A.

**2015: Defendant Misapplies Payment**

7. In or around the fall of 2015, Plaintiff's wife became disabled. As a result, the family struggled with making payments.

8. In or around December 22, 2015, Plaintiff made a substantial payment to cover his missed payments for November 2015 and December 2015, and made his payment for January 2016.

9. Defendant, however, misapplied Plaintiff's payment by paying down the principal balance of the loan, instead of applying the payment to amounts due and owing for January 1, 2016.

10. Defendant then noted the account as past due for January 2016.

**2016: Defendant Refuses Reasonable Loss Mitigation Assistance to Plaintiff**

11. (a) In or around March 2016, Defendant reviewed Plaintiff for loss mitigation assistance.

(b) During this telephone call, Defendant's agent told Plaintiff and his wife Lisa, who was authorized on the account, that Defendant would not accept payments while reviewing Plaintiff for loss mitigation assistance, such that Plaintiff should refrain from attempts to make payments because they would only be returned.

(c) Accordingly, Plaintiff could not make payments for several months.

12. On or about April 5, 2016, Defendant offered Plaintiff a forbearance plan, which temporarily reduced his payments while Defendant considered him for other types of loss mitigation.

13. Plaintiff accepted the forbearance plan and began making payments according to the plan in May 2016.

14. Defendant held the forbearance payments without applying them to amounts due on the account.

15. (a) On or about July 25, 2016, Defendant sent a letter to Plaintiff, denying loss mitigation assistance.

 (b) The letter was confusing to Plaintiff and contained contradictory reasoning.

 (c) It stated that Plaintiff was not eligible for any loan modifications, both because his income was too low, and also because it was too high.

16. Plaintiff was confused by this letter and could not see any legitimate reason to be denied for assistance; he therefore appealed Defendant's denial of the loan modification.

17. On or about August 8, 2016, Defendant refused Plaintiff's appeal without providing any further explanation.

**Plaintiff Directed to Drive to Virginia to Make Payments**

18. In or around the summer of 2016, Plaintiff had funds to make a partial payment to the account.

19. When he asked Defendant's representative if he could make a partial payment, he was told that Defendant would not accept a partial payment by phone, but that such payment would be accepted if he drove to the nearest branch office in Virginia.

20. During this time period, Plaintiff and his wife, Lisa, were advised by Defendant on multiple occasions to drive to Virginia to make payments.

21. Due to Plaintiff's job and his limited means, he was not able to make the trip to Virginia.

22. Defendant's refusal to accept his payments by mail or telephone caused Plaintiff to fall further in arrears.

**Plaintiff Pays Large Sum to Catch Up**

23. Because Defendant refused to provide Plaintiff with reasonable loss mitigation assistance, in or around September 2016, Plaintiff obtained assistance from a local veteran's charity to catch up the loan.

**Defendant Tells Plaintiff Not to Reapply for Loss Mitigation**

24. As a result of Wells Fargo's refusal to provide loss mitigation assistance, Plaintiff continued to struggle with making payments.

25. In or around September 2016, Plaintiff and his wife Lisa confirmed with Wells Fargo that it was continuing to evaluate him for a loan modification.

26. Despite Wells Fargo's confirmation that that it would continue to review Plaintiff for loss mitigation, Plaintiff's single-point-of-contact at Wells Fargo stopped returning Plaintiff's calls.

27. Defendant further told Plaintiff that it would start a new loss mitigation review once his loan was transferred out of a particular department, but was unable to tell Plaintiff when such transfer would take place.

28. Upon information and belief, Defendant did not review Plaintiff for loss mitigation assistance, despite having told Plaintiff that such review was taking place.

29. Thereafter, Plaintiff contacted Defendant about filing a new loss mitigation application and informed Defendant that he had had a change in income.

30. Defendant's agent stated that re-applying for loss mitigation was pointless, because he would be denied again, despite his change in income.

31. In reliance on this representation, Plaintiff did not submit another loan modification application, despite continuing to struggle with payments.

**2017: Payments Misapplied and Refused**

32. In or around May 2017, Plaintiff made a $500.00 payment; contrary to the terms of the parties' contract, which requires that payments be applied first to interest due, then principal due, then escrow, Defendant applied the entire $500.00 to Plaintiff's escrow account.

33. In or around June 2017, Plaintiff made an additional $50.00 payment; Defendant again applied the entire amount to escrow.

34. In or around June 2017, Plaintiff made a $25.00 payment; Defendant did not apply the funds to the account.

35. Thereafter, on or about June 10, 2017, Defendant sent Plaintiff a statement, acknowledging receipt of the $25.00 and instructing Plaintiff to pay $548.75, to make a full payment.

36. When Plaintiff called to make the $548.75 payment, Defendant refused to accept the payment.

**Referral for Foreclosure**

37. On or around June 20, 2017, Defendant accelerated the loan and referred the property for foreclosure.

**Illegal Fees**

38. Pursuant to the loan contract, Plaintiff cannot be charged attorney fees in connection with the collection on the loan.  (See Deed of Trust ¶ 25; Note ¶ 6(E).)

39. Defendant represented to Plaintiff on numerous occasions that Plaintiff would be charged attorney fees in connection with foreclosure.

40. For example, in or around April 5, 2016, Defendant issued a written correspondence to Plaintiff threatening to charge attorney fees in connection with foreclosure.

41. On numerous phone calls, Defendant informed Plaintiff and/or his wife, who was Plaintiff's authorized representative, that they would have to pay attorney fees in connection with the foreclosure.

42. (a) For example, on or about August 3, 2017, Plaintiff's wife, Lisa, called to find out how much they would have to pay to reinstate the loan and prevent foreclosure.

(b) Defendant told Lisa what was owed on the loan, but further stated that to reinstate, they would also have to pay attorney fees and costs associated with the foreclosure.

(c) When Lisa asked how much those would be, Defendant representative stated that it would have to contact the foreclosure attorney, and that every request for the amount would cause the amount owed to increase.

**Impact & Damages**

43. Defendant Wells Fargo did not follow commercially reasonable business practices in servicing the loan, including failing to comply with VA regulations and guidelines and failing to comply with the requirements of its consent order with the U.S. Office of the Comptroller of the Currency, as well as other applicable guidelines, regulations, and standards in servicing the loan.

44. As a result of Defendant's unlawful failure to provide appropriate loss mitigation, misapplication of payments, and refusal to accept Plaintiff's payments, Plaintiff's indebtedness has increased, his home has been placed into foreclosure, and Plaintiff has suffered harm to his credit, annoyance and inconvenience; stress and worry; and fear of loss of home.

45. If Plaintiff had known that Defendant would refuse to accept his payments and would not provide him with assistance, he would have sought other means to save his home,

including borrowing money to bring the loan current and/or refinancing with another lender prior to his credit being damaged.

46. As of the date of filing, Plaintiff must pay approximately $4,565.00 to reinstate his loan.

## CLAIMS FOR RELIEF

## COUNT I - BREACH OF CONTRACT

47. Plaintiff incorporates the preceding paragraphs by reference.

48. There exists a duty of good faith and fair dealing implied in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the benefit of their contract.

49. Plaintiff and Defendant entered contracts (the Note and Deed of Trust) that limit each party's rights and responsibilities.

50. The contract provides that Defendant must apply all payments to the account, and that payments must be applied first to interest due, then principal due, and then escrow. (See Deed of Trust ¶ 2.)

51. The contract prohibits the collection of attorney fees. (See Deed of Trust ¶ 25; Note ¶ 6(E).)

52. The contract further provides that Defendant's rights upon the borrower's default are limited by Title 38 of the United States Code and any regulations issued thereunder. (See Note ¶ 11; Deed of Trust & VA Guaranteed Loan and Assumption Policy Rider.)

53. Defendant breached the contract by:

  (a) applying Plaintiff's payments to pay-down the principal balance instead of applying the payment to amounts due on the loan;

      (b)    refusing to accept payments while reviewing Plaintiff for loss mitigation;

      (c)    applying Plaintiff's payments to escrow instead of amounts due and owing on interest and principal;

      (d)    charging and/or threatening to charge attorney fees associated with foreclosure;

      (e)    misrepresenting to Plaintiff that he would be reviewed for loss mitigation when, in fact, he was not;

      (f)    discouraging Plaintiff from seeking loss mitigation assistance by telling Plaintiff such attempts would be futile and instead proceeding with foreclosure on Plaintiff's home; and

      (g)    notwithstanding contractual language requiring compliance with VA regulations, failing to comply with VA regulations and guidance requiring, *inter alia*, that the Defendant consider Plaintiff for a variety loss mitigation options, and provide notice of such rejection(s) in writing, prior to foreclosure.

54.    Defendant's conduct was willful and intentional.

55.    Plaintiff was damaged as a proximate result of Defendant's breach of its contractual duties.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

      (a)    Appropriate actual damages and equitable relief;

      (b)    The Court enjoin Defendants from taking possession or scheduling foreclosure of Plaintiff's home;

      (c)    Punitive damages;

      (d)    Such other relief as the Court deems equitable and just.

## COUNT II – ILLEGAL DEBT COLLECTION PRACTICES

56. Plaintiff incorporates the preceding paragraphs by reference.

57. Defendant attempted to collect by using unfair and/or unconscionable means, in violation of section 46A-2-128 of the West Virginia Code, including but not limited to directing Plaintiff to not make payments while being considered for a loan modification, thereby causing Plaintiff to fall further behind, but then refusing to offer loss mitigation assistance to Plaintiff, and by dissuading Plaintiff from reapplying for loss mitigation following a change in income.

58. Defendant made fraudulent, deceptive, or misleading representations as a means to collect or attempt to collect on the mortgage loan, in violation of section 46A-2-127 of the West Virginia Code, including but not limited to representing to Plaintiff that it was continuing to evaluate Plaintiff for loss mitigation assistance when, in fact, it did not do so, and by telling Plaintiff that it was futile to reapply for loss mitigation assistance, despite Plaintiff's change in income.

59. Defendant made fraudulent, deceptive, or misleading representations as a means to collect or attempt to collect on the mortgage loan, by falsely representing the character or amount owed in violation of section 46A-2-127(d) of the West Virginia Code.

60. Defendant made fraudulent, deceptive, or misleading representations as a means to collect or attempt to collect on the mortgage loan, by representing that Plaintiff owed attorney's fees, when in fact such fees may not be legally added to the existing obligation, in violation section 46A-2-127(g) of the West Virginia Code.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

    (a) Declaration that Defendant has used an unfair or unconscionable means to collect a debt as alleged and enjoin the illegal conduct;

    (b)    Actual damages and appropriate civil penalties for <u>each</u> violation pursuant to West Virginia Code sections 46A-5-101(1) and 106;

    (c)    Reasonable attorney fees and costs pursuant to West Virginia Code section 46A-5-104; and

    (d)    Such other relief as the Court deems equitable and just.

### COUNT III – FAILURE TO ACCEPT PAYMENTS

61. Plaintiff incorporates the preceding paragraphs by reference.

62. Defendant Wells Fargo wrongly refused to allow Plaintiff to make payments, in violation of West Virginia Code § 46A-2-115 and § 46A-2-127.

63. As a result, Plaintiff was prohibited from preventing the accumulation of additional charges, interest, and fees, and ultimately his home was put into foreclosure.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

    (a)    Actual damages;

    (b)    Appropriate civil penalties for <u>each</u> violation pursuant to West Virginia Code sections 46A-5-101(1) and 106;

    (c)    Reasonable attorney fees and costs pursuant to West Virginia Code section 46A-5-104; and

    (d)    Such other relief as the Court deems equitable and just.

### COUNT IV – MISAPPLICATION OF PAYMENTS

64. Plaintiff incorporates the preceding paragraphs by reference.

65. Defendant Wells Fargo failed to apply payments upon receipt to amounts due and owing in violation of West Virginia Code section 46A-2-115(c).

**WHEREFORE**, Plaintiff respectfully requests the following relief:

  (a)  Actual damages;

  (b)  Appropriate civil penalties for <u>each</u> violation pursuant to West Virginia Code sections 46A-5-101(1) and 106;

  (c)  Reasonable attorney fees and costs pursuant to West Virginia Code section 46A-5-104; and

  (d)  Such other relief as the Court deems equitable and just.

## COUNT V – VIOLATION OF REGULATION X

66. Plaintiff incorporates the preceding paragraphs by reference.

67. The Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 *et seq* ("RESPA"), provides that "a servicer of a federally related mortgage shall not…fail to comply with any other obligation found by the Bureau of Consumer Financial Protection ("CFPB"), by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

68. The CFPB promulgated regulations pursuant to RESPA and created a private right of action for consumers for violations of 12 C.F.R. § 1024.41.

69. As alleged herein, Defendant Wells Fargo failed to comply with the regulations promulgated by the CFPB, as set forth in 12 C.F.R. § 1024.41, including but not limited to the following ways:

  (a)  failing to exercise reasonable diligence in obtaining documents and information from Plaintiff to complete his loss mitigation application by claiming additional information was needed despite Plaintiff having already submitted a complete loss mitigation package, in violation of 12 C.F.R. 1024.41(b)(1);

      (b)    failing to evaluate Plaintiff's completed loss mitigation application for all loss mitigation options available to Plaintiff in violation of 12 C.F.R. § 1024.41(c)(1)(i);

      (c)    failing to act and carry out its duties under the regulations in good faith by refusing to review Plaintiff's loss mitigation application for available options in its discretion in violation of 12 C.F.R. § 1024.41(c)(2)(ii); and

      (d)    dual tracking Plaintiff's loan in violation of 12 C.F.R. § 1024.41(g).

70.    Defendant Wells Fargo has a pattern and practice of noncompliance with its obligations under 12 C.F.R. § 1024.41, as demonstrated through Plaintiff's experience and the experience of other borrowers.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

      (a)    Actual damages pursuant to 12 U.S.C. § 2605(f)(1)(A);

      (b)    Statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(B);

      (c)    Attorneys fees and costs incurred in pursuing this action pursuant to 12 U.S.C. § 2605(f)(3); and

      (d)    Such other relief as this Court deems fair and proper in the interest of justice.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

                              **Plaintiff,**
                              **MICHAEL HUNT,**
                              **By Counsel.**

/s/ Lydia C. Milnes
Lydia C. Milnes (WV Bar No. 10598)
Jennifer S. Wagner (WV Bar No. 10639)
Mountain State Justice, Inc.
325 Willey Street
Morgantown, WV 26505
(304) 326-0188

(304) 326-0189 (fax)
lydia@msjlaw.org